# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE INIGUEZ,<br><br>               Plaintiff,<br><br>v.<br><br>PATRICIA NEWTON,<br><br>               Defendant. | 3:16-cv-2601-LAB-PCL<br><br>**REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION TO DISMISS [Doc. 6-1]** |

## **I. INTRODUCTION**

Plaintiff Jose Iniguez ("Plaintiff"), an inmate currently housed at Calipatria State Prison, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, and California state law under the California Torts Claims Act, Government Code §§ 810 and 844.6(d). Plaintiff alleges violations resulting from medical care given by Dr. Patricia Newton ("Defendant"). Presently before this Court is a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Honorable Larry Alan Burns referred the matter to the undersigned Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 72.1(c)(d). After a thorough review of the pleadings and supporting documents, this Court recommends the Motion to Dismiss be **GRANTED**.

///

///

## II. FACTUAL BACKGROUND

Plaintiff underwent several orthopedic surgeries to remove "bony tumors" in his feet.[1] (Doc. 1 at 3.) Plaintiff's last surgery, on May 28, 2015, was successful on his right foot but left his left foot "deformed." (Id.) Plaintiff does not describe his exact medical diagnosis, symptoms, previous treatment, or provide detail on the resulting deformity. On June 2, 2015, Plaintiff met with Defendant, Dr. Patricia Newton, for "severe" pain he was experiencing in his left foot. (Id. at 4.) Plaintiff had difficulty walking on crutches to the dining hall, and requested to be "cell fed" for the five days of his approved recovery period. (Id.) In response, Defendant told him he needed to "man up" and that often shortly after foot surgery people "walk around with no problem." (Id.) On June 19, 2015, Plaintiff requested "adequate" pain medication and a disability vest from Defendant, who refused to provide these items. (Id.) On June 30, 2015, Plaintiff filed a Reasonable Accommodation Request for stronger medication, a mobility vest, orthopedic shoes, and a walking cane to "help take pressure of his foot." The Appeals Coordinator's Office denied Plaintiff's request, and advised him to file an administrative appeal. (Id.)

On July 10, 2015, Plaintiff was seen by Nurse Alvarez regarding pain in his left foot. (Doc. 1 at 4.) Defendant instructed Alvarez to not make changes to Plaintiff's treatment plan. On July 15, 2015, Defendant "confiscated" Plaintiff's crutches and once again denied his request for a walking cane and additional pain medication. (Id.) On July 28, 2015, Plaintiff met with Dr. Ben Wehrli, the surgeon who operated on him on May 28, 2015. (Id. at 3.) Dr. Wehrli recommended another surgery. Plaintiff feared further deformity, pain,

---

[1] Plaintiff does not state in his Complaint what bony tumors are or how many surgeries he has had. According to the American College of Foot and Ankle Surgeons, bony tumors are "caused by an abnormal growth of cells. They may be benign (noncancerous) or malignant (cancerous). Although rare, bone tumors can occur in the foot and ankle. They can be primary (originating in the bone) or secondary (originating in another part of the body). Symptoms of a bone tumor may include: [f]racture from slight injury, [b]one pain, often at night, [and] [o]ccasionally a mass or swelling in the area." *Bone Tumors in the Foot*, FOOT HEALTH FACTS https://www.foothealthfacts.org/conditions/bone-tumors-in-the-foot. (last visited July 28, 2017).

and difficulty with mobility, so he declined the surgery. On August 4, 2015, Dr. Wehrli again recommended a second surgery. However, Plaintiff again declined the surgery because there was no promise of correcting the deformity. (Id.)

On October 16, 2015, Plaintiff filed his first administrative appeal, again requesting pain medication beyond Ibuprofen, a mobility vest, orthopedic shoes, and a walking cane. (Doc. 1 at 4.) On November 17, 2015, Plaintiff spoke with Defendant regarding the appeal. (Id.) Plaintiff alleges Defendant was "very angry" toward him and said the appeal was "totally unnecessary." (Id.) Defendant also said she was going to refer him for orthopedic shoes and antidepressants for the pain, but that was "all [he was] getting." (Id. at 4–5.) Defendant further said she would not give him any other pain medication and that she was going to remove his medical accommodations. (Id. at 5.) On November 23, 2015, Plaintiff filed another administrative appeal against Defendant for Reasonable Comprehensive Accommodation and for retaliation. (Id.)

On December 10, 2015, Plaintiff sought mental health services for stress and insomnia "as a result of Defendant's actions." (Doc. 1 at 5.) "It is extremely difficult for Plaintiff to understand why [D]efendant Newton does not believe or does not want to believe that [P]laintiff . . . continues to suffer physical pain as a result of the botched foot surgery. The stress is so unable [sic] at times that [P]laintiff cannot sleep." (Id.) On December 22, 2015, Dr. Wehrli recommended Plaintiff receive the pain medication Neurontin, a walking cane, and orthopedic shoes. (Id. at 3, 5.) On January 5, 2016, Defendant spoke with Plaintiff about Dr. Wehrli's recommendation. Defendant told Plaintiff she would not follow the recommendation, with the exception of the orthopedic shoes. (Id. at 5.) Defendant went on to "scold" Plaintiff about his attitude and persistence in seeking additional pain medication and a cane. On September 26, 2016, Plaintiff again went to see Defendant regarding the pain in his left foot. (Id.) Plaintiff told Defendant the pain was "so unbearable" he felt he had no choice but to have surgery. Defendant replied "[g]et out of here. You had your opportunity for another surgery." (Id.) On February 12,

2016, Plaintiff filed a Government Claims board petition (#G62941), and as of this date has not received a response. (Id. at 5.)

Plaintiff filed this Complaint on October 17, 2016, suing Defendant in both her individual and official capacities. (Doc. 1 at 1–2.) Plaintiff alleges 1) Defendant denied him adequate medical care in retaliation for filing an administrative appeal, in violation of the First Amendment; 2) that Defendant denied his right to medical care in violation of the Eighth Amendment, and; 3) Defendant's failure and refusal to provide adequate medical care constituted negligence under state law. (Id. at 3–7.) Plaintiff requests an injunction, damages, punitive damages, and an order for Defendant to satisfy his medical request. (Id. at 9.) Defendant moves to dismiss Plaintiff's Complaint for failure to state a claim, failure to exhaust administrative remedies, and failure to comply with the California Tort Claims Act. (Doc. 6-1.)

## III. STANDARD OF REVIEW

A. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the sufficiency of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). However, courts may consider materials of which the court may take judicial notice, and exhibits that are attached to the complaint. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994). Exhibits that contradict the allegations of a complaint may fatally undermine the complaint's allegations. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims." (citing Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true

conclusory allegations which are contradicted by documents referred to in the complaint.")))

A motion to dismiss should be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Citation omitted.] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (quoting Twombly, 550 U.S. at 556, 570).

"All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996) (citing Nat'l Wildlife Fed. v. Espy, 45 F.3d 1337, 1340 (9th Cir. 1995)). The Court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell, 266 F.3d at 988 (citing Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Papasan v. Allain, 478 U.S. 265, 286 (1986) (on motion to dismiss, court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "[T]he pleading standard Rule 8 does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." Id. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 570 (when plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")).

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

## IV. DISCUSSION

A. Request for Judicial Notice[2]

Defendant asks the Court take judicial notice on the following records and search:

Ex. 1: Certified Records of the Claims Board for Jose Iniguez (CDCR # J-36853) related to his claim number G629421. (Doc. 6-2 at 2.)

Record Search: Search was conducted regarding all claims submitted by Jose Iniguez to the Claims Board from March 28, 2015 to February 8, 2017, and no claims other than claim number G629421 were located. (Id.)

A court may take judicial notice of a fact that is not reasonably disputed if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). On a motion to dismiss, courts may consider "matters of public record." Northstar Fin. Advisors Inc. v. Schwab Inv., 779 F.3d 1036, 1042 (9th Cir. 2015) (quoting Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010)). "Matters of public record" include records and reports of administrative agencies. Enciso

---

[2] A court may take judicial notice of what attached documents contain, but not the truth of those contents. Lee v. City of Los Angeles, 250 F.3d 668, 689–690 (9th Cir.2001).

v. Moon, 2015 WL 673269, at *6 n.6 (E.D. Cal. Feb. 17, 2015) (citing <u>United States v. 14.02 Acres of Land More or Less in Fresno Cty.</u>, 547 F.3d 943, 955 (9th Cir. 2008)). A court may also take judicial notice "that an authorized custodian of records for [CDCR] conducted a search of the [CDCR] records" and of the results of that search. <u>Martin v. Hedgpeth</u>, 2014 WL 3884287, at *6 (N.D. Cal. Aug. 7, 2014).

Here, Defendant requests the Court take judicial notice of Plaintiff's Government Claims Board petition. (Doc. 6-2 at 2.) Whether Plaintiff filed a Government Claims petition is not in dispute. Plaintiff states in his Complaint that he filed the petition. (Doc. 1 at 5.) Furthermore, public records that are authorized to be judicially noticed include records and reports of administrative agencies such as the CDCR. Therefore, judicial notice is proper.

Defendant also requests the Court judicially notice that a search was conducted regarding all claims submitted by Plaintiff to the Claims Board from March 28, 2015, to February 8, 2017, and that no claims other than claim number G629421 were located. (Doc. 6-2 at 2.) Whether Plaintiff filed one or more Government Claim petitions is not in dispute. Plaintiff states in his Complaint he filed only one petition, claim number G629421. (Doc. 1 at 5.) Furthermore, a court is allowed to take judicial notice that an authorized custodian of a public agency conducted a search of the records. Thus, judicial notice is proper.

Therefore, this Court recommends Defendant's judicial notice request be **GRANTED.**

B. Motion to Dismiss

Plaintiff alleges Defendant failed to provide adequate medical care as retaliation for filing an administrative appeal, in violation of the First Amendment. Further, Plaintiff alleges Defendant denied Plaintiff his right to medical care under the Eighth Amendment. Lastly, Plaintiff alleges negligence under the California Torts Claims Act. (Doc. 1 at 3–7.) Plaintiff seeks (1) an injunction preventing Defendant from retaliating against him, (2) damages, (3) punitive damages, and (4) an order requiring Defendant to provide adequate pain management. (<u>Id.</u> at 9.)

///

7

3:16-cv-2601-LAB-PCL

1. <u>Retaliation Claim (First Amendment)</u>

Plaintiff alleges Defendant violated his First Amendment right to freedom of speech when she denied him adequate medical care, in retaliation for Plaintiff filing an administrative appeal. (<u>Id.</u> at 3.) Defendant contends Plaintiff fails to plead facts that show Defendant made an adverse or a retaliatory action that denied him his freedom of speech. (Doc. 6-1 at 8–9.)

"Incarceration does not divest prisoners of all constitutional protections." <u>Shaw v. Murphy</u>, 532 U.S. 223, 228 (2001). There is no statute or case law to suggest that prisoners do not have a right to speak to correctional officers. <u>See</u>, e.g., <u>Clark v. Woodford</u>, 36 Fed. Appx. 240, 241 (9th Cir. 2002). In particular, "[p]risoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009)). Retaliation claims have five elements. <u>Watison</u>, 668 F.3d at 1114.

First, a plaintiff must claim that "the retaliated-against conduct is protected." <u>Id.</u> Filing a grievance against a correctional officer or other individual within the prison's administration is protected conduct. <u>Id.</u> Second, Plaintiff must allege that the "defendant took adverse action against the plaintiff," though "the adverse action need not be an independent constitutional violation." <u>Id.</u> Thus, the mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect. <u>Brodheim</u>, 584 F.3d at 1270. However, not every allegedly adverse action is sufficient to support a claim for retaliation under § 1983. <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (harm must be "more than minimal" (quoting <u>Rhodes</u>, 408 F.3d at 568 n.11)); <u>Bell v. Johnson</u>, 308 F.3d 594, 603 (6th Cir. 2002) ("[S]ome adverse actions are so de minimis that they do not give rise to constitutionally cognizable injuries." (citing <u>Thaddeus–X v. Blatter</u>, 175 F.3d 378, 396 (6th Cir. 1999))).

Third, the plaintiff must claim that a causal connection exists between the adverse action and the plaintiff's protected conduct. <u>Watison</u>, 668 F.2d at 1114. In other words, "a

plaintiff must show that his protected conduct was 'the "substantial" or "motivating" factor behind the defendant's conduct.' " Brodheim, 584 F.3d at 1271 (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). Owing to the fact that a plaintiff rarely can produce direct evidence of a defendant's retaliatory intent, a plaintiff may plead circumstantial evidence that permits the inference of retaliation, such as the chronology of events. See Watison, 668 F.2d at 1114; see also Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995). Fourth, "the plaintiff must allege that the 'official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.' " Watison, 668 F.3d at 1114 (quoting Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005)). An otherwise permitted action can be the basis for a retaliation claim if performed with a retaliatory motive and lacking a legitimate correctional goal. See id. at 1115. Even if a plaintiff fails to allege a chilling effect, he may still state a claim by alleging that he suffered some other "more than minimal" harm. Id. Last, the plaintiff must allege that the defendant's retaliatory conduct did not advance legitimate penological interests. Id. "A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious ... or that they were 'unnecessary to the maintenance of order in the institution.'" Id. at 1114–15 (quoting Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984)) (internal citations omitted).

Stated plainly, in order to state a retaliation claim, Plaintiff must assert facts showing that (1) Defendant took adverse action against him (2) because of (3) Plaintiff's protected conduct (filing administrative appeal), and that such action (4) chilled the exercise of Plaintiff's First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Plaintiff fails to satisfy this requirement.

Here, Plaintiff fails to allege sufficient facts that show Defendant took an adverse action against him. Plaintiff states that after he filed his first administrative appeal, Defendant met with him and said she would refer him for orthopedic shoes and antidepressants. It seems counterintuitive to say Defendant acted adversely against Plaintiff

when she said she was going to refer him for two of four things he requested in his administrative appeal.

Furthermore, Plaintiff also fails to explain how Defendant's refusal to provide a second surgery was an adverse action. Plaintiff states he requested a second surgery, and Defendant denied his request, saying "…get out of here. You had your opportunity for another surgery." There are legitimate reasons why such a statement would be made and the statement alone does not establish that Defendant took adverse action against Plaintiff because he filed an administrative appeal. Plaintiff does not show how denying surgery chilled Plaintiff's exercise of his First Amendment rights. Defendant may have denied the additional surgery request because Plaintiff had, on his own, twice denied this surgery fearing additional pain without additional relief. Plaintiff's allegations do not satisfy the requirement for an adverse action.

Plaintiff also fails to state facts that show a causal connection between Defendant's actions and the protected conduct. Plaintiff states that after he filed the first administrative appeal, Defendant met with him, seemed angry, and said the appeal was totally unnecessary. Defendant also agreed to refer him for orthopedic shoes and antidepressants. Subsequently, Defendant told him she was removing his medical accommodations. However, Plaintiff fails to state sufficient facts that show the substantial or motivating factor behind removing the medical accommodations was his protected conduct. Defendant could have said she was going to remove Plaintiff's accommodations because they were no longer medically necessary or because she was changing his course of treatment. In addition, Plaintiff's first administrative appeal was a Reasonable Comprehensive Accommodation request, not a grievance specifically against Defendant. Therefore, it is unlikely Defendant was motivated to remove Plaintiff's accommodations because she was retaliating.

Additionally, Plaintiff fails to state facts that show Defendant's actions chilled his First Amendment right to freedom of speech. Plaintiff must be able to show Defendant's actions would silence a person of ordinary firmness from future First Amendment

activities. On November 17, 2015, Defendant allegedly threatened to remove Plaintiff's medical accommodations. Six days later, Plaintiff filed another administrative appeal for Reasonable Comprehensive Accommodation and for retaliation. Additionally, he filed a Government Claims board petition. This shows Plaintiff was, at the very least, not silenced from future First Amendment right activities.

Therefore, Defendant's Motion to Dismiss based on First Amendment retaliation should be **GRANTED.**

2. Deliberate Indifference to Medical Care (Eighth Amendment)

Plaintiff alleges Defendant violated his Eighth Amendment right when Defendant showed deliberate indifference to his medical needs by refusing to follow Dr. Wehrli's recommendations of providing the pain medication Neurontin, a walking cane, and orthopedic shoes. (Doc. 1 at 6.) Defendant argues that Plaintiff merely disagreed with her treatment plan, and this fact alone does not amount to deliberate indifference. (Doc. 6-1 at 10–11.) Plaintiff argues that Dr. Wehrli's recommendation for additional surgery was made by a "medically advanced specialist hired by the prison" and that that Defendant did not offer any reasonable explanation for not following the recommendation. (Doc. 8 at 2.) Defendant argues Dr. Wehrli's treatment plan constituted nothing more than a difference in medical opinion, which does not rise to deliberate indifference. (Doc. 9 at 2.)

The Eighth Amendment proscription against cruel and unusual punishment encompasses the government's obligation to provide adequate medical care to those whom it is punishing by incarceration. See Estelle v. Gamble, 429 U.S. 97, 103 (1976). In order to establish an Eighth Amendment claim based on inadequate medical care, plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. See Helling v. McKinney, 509 U.S. 25, 32, 113 (1993); Gamble, 429 U.S. at 106; McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir.1997).

Deliberate indifference to the serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. See

McKinney, 509 U.S. at 32; Gamble, 429 U.S. at 104; McGuckin, 974 F.2d at 1059. A "serious" medical need arises if the failure to treat the plaintiff could result in further significant injury or the "unnecessary and wanton infliction of pain." Gamble, 429 U.S. at 104; McGuckin, 974 F.2d at 1059.

Deliberate indifference may be manifested by the intentional denial, delay or interference with the plaintiff's medical care, or by the manner in which the medical care was provided. See Gamble, 429 U.S. at 104–05; McGuckin, 974 F.2d at 1059. However, the defendant must purposefully ignore or fail to respond to the plaintiff's pain or medical needs. See McGuckin, 974 F.2d at 1060. Thus, neither an inadvertent failure to provide adequate medical care, nor mere negligence or medical malpractice, nor a mere delay in medical care (without more), nor a difference of opinion over proper medical treatment, is sufficient to constitute an Eighth Amendment violation. See, e.g., Gamble, 429 U.S. at 105–06; Toguchi v. Chung, 391 F.3d 1051, 1058–60 (9th Cir.2004); Jackson v. Mcintosh, 90 F.3d 330, 332 (9th Cir.1996); Sanchez v.Vild, 891 F.2d 240, 242 (9th Cir.1989); Shapley v. Nevada Bd. of State Prison Commissioners, 766 F.2d 404, 407 (9th Cir.1984).

Moreover, the Eighth Amendment does not require optimal medical care or even medical care that comports with the community standard of medical care. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." See Gamble, 429 U.S. at 106: see also, e.g., Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir.1995); McGuckin, 974 F.2d at 1050; Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990).

Here, construing the facts in the light most favorable to Plaintiff, this Court finds Plaintiff fails to allege a cognizable Eighth Amendment violation. Specifically, Plaintiff fails to show Defendant's actions could result in further significant injury or increased pain.

Plaintiff states he was harmed by his last surgery, not from Defendant's actions. (Doc. 1 at 3.) Furthermore, Plaintiff does not state how being denied a second surgery or the accommodations he requested led to further harm. Plaintiff states he was in "severe" pain and was forced to walk with crutches to the dining hall because he was not allowed to eat in his cell. Plaintiff, however, does not argue this caused his condition to deteriorate. Plaintiff states he sought mental health services for stress and insomnia because of Defendant's actions. However, Plaintiff's statement merely shows that what has caused him stress and insomnia was his disagreement with Defendant's treatment plan, not her actions.

Plaintiff also fails to show Defendant was deliberately indifferent to his medical need. According to Plaintiff, Defendant met with him five times. Furthermore, Defendant referred him for orthopedic shoes and antidepressants. (Id. at 4.) Plaintiff states Nurse Alvarez called Defendant regarding Plaintiff's treatment plan, and that Defendant refused to allow changes. (Id.) However, Plaintiff fails to state how Defendant's refusal to change his treatment plan constituted deliberate indifference. It is clear from the Complaint that Plaintiff disagrees with Defendant's treatment plan and believes her refusal to follow Dr. Wehrli's recommendation shows deliberate indifference. However, Defendant is not the only one that disagrees with the accommodations Plaintiff requested. The Appeals Coordinator's Office denied Plaintiff's initial request (Id.) In addition, Dr. Wehrli did not recommend a mobility vest (Id. at 5.) As such, Defendant's treatment plan was reasonable and medically acceptable under the circumstances.

Therefore, Defendant's Motion to Dismiss the Eighth Amendment claim should be **GRANTED**.

3. Plaintiff's Claims Against Defendant in her Official Capacity

Plaintiff sues Defendant in her official capacity. (Doc. 1 at 2.) Defendant argues all claims seeking monetary relief against her in her official capacity should be dismissed. (Doc. 6-1 at 16.)

The Eleventh Amendment grants the states immunity from private civil suits. U.S. Const. amend. XI; Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1040 (9th Cir. 2003). It also provides immunity for state officials sued in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). "As such, it is no different from a suit against the State itself." Id. (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 n.55 (1978)). "The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." Antoine v. Byers & Anderson, 508 U.S. 429, 432 (1993) (footnote omitted).

In Will, the Supreme Court recognized one vital exception to the general rule that states, state agencies, and state officials sued in their official capacities are not persons subject to civil rights suits under 42 U.S.C. § 1983. When sued for prospective injunctive relief, a state official in his official capacity is considered a "person" for § 1983 purposes. See Will, 491 U.S. at 71 n. 10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' ") This exception recognizes the doctrine of Ex Parte Young, 209 U.S. 123 (1908), that a suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity. See Rounds v. Or. State Bd. of Higher Educ., 166 F.3d 1032, 1036 (9th Cir.1999) ("Ex Parte Young provided a narrow exception to Eleventh Amendment immunity for certain suits seeking declaratory and injunctive relief against unconstitutional actions taken by state officers in their official capacities."); Flint v. Dennison, 488 F.3d 816, 825 (9th Cir. 2007); Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 840 (9th Cir. 1997).

Here, Plaintiff sues Defendant in her individual and official capacities, and seeks monetary damages and injunctive relief. (Doc. 1 at 9.) Defendant has justified immunity to

monetary damages in her motion to dismiss by citing the Eleventh Amendment. (Doc. 6-1 at 16.) Under the Eleventh Amendment, Defendant is immune from suit in her official capacity for money damages. However, Defendant is not immune from being sued for injunctive relief.

Accordingly, Defendant's Motion to Dismiss the official capacity claims seeking monetary relief should be **GRANTED.**

4. State Tort Negligence

Plaintiff sues Defendant under a state law claim of negligence. (Doc. 1 at 7.) Defendant argues the negligence claim is subject to dismissal because Plaintiff failed to allege compliance with the California Tort Claims Act. (Doc. 6-1 at 16–17.)

Failure to comply with claim-filing requirements imposed by the California Torts Claims Act bars pendent state claims. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). When a personal injury claim against the State is presented to the Claims Board, the claimant is required to pay a filing fee of $25. Cal. Gov't Code § 905.2(c) (West 2016). A claimant who requests a waiver of the filing fee shall attach to the application (1) a signed affidavit requesting the waiver and (2) verification of benefits or income and any other required financial information in support of the requests for the waiver. Cal. Gov't Code § 905.2(c)(2) (West 2016). For inmates, the required financial information is a certified copy of their trust account balance that has a balance of $100 or less. Cal. Gov't Code § 905.2(c)(1)(C) (West 2016).

Here, Defendant has submitted certified records from the Claims Board showing Plaintiff did not submit a certified copy of his trust account balance. (Doc. 6-2 at 3–25.) Plaintiff asserts he attached a certified copy of his trust account. (Doc. 8 at 3.) However, a review of his files does not reveal a copy of the document. (Id.) Therefore, Plaintiff concedes he is unable to show he attached a certified copy of his trust account and agrees his negligence claim can be dismissed. (Id.)

Therefore, Defendant's Motion to Dismiss based on state tort negligence should be **GRANTED.**

B. <u>Failure to Exhaust Administrative Remedies</u>

Plaintiff claims he exhausted all administrative remedies before filing his Complaint. (Doc. 1 at 4–5.) Defendant argues Plaintiff's failure to exhaust is clear on the face of the Complaint regarding the September 26, 2016 refusal of Plaintiff's request for surgery. (Doc. 6-1 at 13.) Defendant argues that Plaintiff filed his suit eleven days after this refusal, making it impossible to have exhausted his administrative remedies. (<u>Id</u>.)

A prisoner must exhaust all administrative remedies before filing a suit under the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a); <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002); <u>Lira v. Herrera</u>, 427 F.3d 1164, 1169 (9th Cir. 2005). In a non-enumerated Rule 12(b) motion to dismiss for failure to exhaust administrative remedies, defendants "have the burden of raising and proving exhaustion." <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003). The defendant, and not the plaintiff, bears the burden of proving the plaintiff had available administrative remedies that he or she did not utilize. <u>Id.</u> To show failure to exhaust, defendants may go outside the pleadings and submit supporting affidavits or declarations. <u>Id.</u> The plaintiff, however, must be provided an opportunity to develop a record to refute defendants' prima facie showing of non-exhaustion. <u>Id.</u> at 1120 n.14.

In a nonenumerated Rule 12(b) motion to dismiss, the court may look at both parties' submissions outside the pleadings to resolve factual issues regarding exhaustion. <u>Id.</u> The PLRA requires that a plaintiff exhaust only "available" administrative remedies. 42 U.S.C. § 1997(e)(a). For example, if an inmate's appeal is granted at a lower level, the inmate need not appeal to the next level because there is nothing left to exhaust. <u>See</u> <u>Brady v. Attygala</u>, 196 F.Supp.2d 1016, 1022-23 (C.D. Cal. 2002) (finding further exhaustion not required where appeal was granted at the second level); <u>Gomez v. Winslow</u>, 177 F.Supp.2d 977, 985 (N.D. Cal. 2001) (allowing an inmate to file suit where he had "won" his inmate appeal by receiving a "partial grant" at the second level).

Further, refusing to give an inmate grievance forms could raise the inference the prisoner "exhausted" his administrative remedies. <u>See</u> <u>Mitchell v. Horn</u>, 318 F.3d 523, 529

1 (3rd Cir. 2003) (reversing a district court's dismissal of a section 1983 case because it did not consider Plaintiff's allegation that prison officials refused to provide him with the grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (concluding that any remedy prison officials prevent a prisoner from utilizing is not an "available" remedy as section 1997(e)(a) defines that term).

"Any inmate . . . may appeal any departmental decision, action, condition, or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15 § 3084.1(a) (2016). An inmate must complete the following steps to exhaust at the administrative level: (1) attempt to informally resolve the problem with the staff member involved, id. at § 3084.5(a); (2) submit a grievance on the CDCR inmate 602 form, id. at § 3084.5(b); (3) appeal to the institution head or his/her designee for a second level of review, id. at § 3084.5(c); and (4) appeal to the Director of CDCR or his/her designee for a third and final level of review. Cal. Dept. of Corr. Operations Manual § 54100.11; Nichols v. Logan, 355 F.Supp. 2d 1155, 1161 (S.D.Cal. 2004).

Prisoners must submit their appeal within fifteen working days of the event or lower decision being appealed. Cal. Code Regs. tit. 15 § 3084.6(c) (2016). To properly exhaust, a prisoner must complete the administrative review process according to the applicable rules, including meeting deadlines and complying with other critical procedural rules. Woodford v. Ngo, 548 U.S. 81, 90 (2006). If a prisoner concedes that he or she did not exhaust, that concession is a valid ground for dismissal so long as no exception to exhaustion applies. Wyatt, 315 F.3d at 1120.

Here, based on the facts outlined in his Complaint, Plaintiff has not exhausted all administrative remedies regarding, at least, the September 26, 2016 incident. Plaintiff alleges he submitted two administrative appeals, filed on October 16, and November 23, 2015. (Doc. 1 at 4–5.) Plaintiff did not include copies of any of his appeals as attachments to his Complaint. As such, it is impossible to know which of his allegations included in the Complaint have been brought to the attention of prison officials or addressed through the three administrative levels. According to the complaint, Plaintiff states that the last incident

for which he sues happened on September 26, 2016 and then filed this lawsuit less than a month later. Plaintiff does not indicate if he filed a second or third-level appeal for the September 26 event. Further, as Defendant argues, it is likely impossible that Plaintiff could have gone through all of the required levels of administrative remedies required as a threshold for a § 1983 case in such a limited amount of time. Plaintiff has also not argued that he has access to any of the available exceptions for exhausting his administrative remedies. Plaintiff may be able to establish exhaustion should he amend his Complaint to address its deficiencies, however it is clear on the face of the Complaint as it currently stands that Plaintiff has not exhausted all of his administrative remedies.

Thus, this Court recommends the motion to dismiss for failure to exhaust should be **GRANTED.**

## V. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** the District Court issue an order: (1) approving and adopting this Report and Recommendation, (2) granting Defendant's motion to dismiss.

**IT IS ORDERED** that no later than August 23, 2017, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections be filed with the Court and served on all parties no later than September 6, 2017. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated: August 9, 2017

Hon. Peter C. Lewis
United States Magistrate Judge